# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2022

Lyle W. Cayce
Clerk

No. 21-10448

Larry L. Sears,

*Plaintiff—Appellant*,

*versus*

Zions Bancorporation NA, *formerly known as* ZB NA, *doing business as* Amegy Bank of Texas,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2810-C

Before Richman, *Chief Judge*, and Clement and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:*

In this case, we must determine whether a 64-year-old banker provided sufficient evidence of age discrimination to survive summary judgment. We hold that he did. Accordingly, we reverse and remand.

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

## I.

Larry Sears was hired by Zions Bancorporation (d/b/a/ Amegy Bank of Texas, or "Amegy") on October 1, 2012, as a Senior Vice President ("SVP") in the Dallas bank energy lending department. Sears was hired by the group's manager, Terry McCarter, and Amegy's Head of Energy, Steve Kennedy. Sears initially reported to McCarter, who in turn reported to Kennedy. McCarter left the bank in late 2016, after which Sears reported directly to Kennedy. Sears's primary role was business development; his role as an SVP was described as the "hunter" of the group.

In early 2018, Amegy had four SVPs in its Dallas energy lending group: Sears (aged 64), John Murray (aged 63), Jill McSorley (aged 54-55), and J.B. Askew (aged 31). Askew had been promoted to the role only in February 2018. The Dallas energy lending group also included Vice President Matt Lang, an employee in his thirties who had been promoted by Kennedy in February 2018, and Assistant Vice President Jack Bush, an employee in his thirties that had been promoted by Kennedy in October 2017.

Amegy concedes that Kennedy was "broadly satisfied" with Sears's performance, though his performance review scores began to falter after McCarter left. For example, while Sears's 2015 and 2016 reviews placed him at a 4.5/5 and 4.8/5 rating, respectively, his 2018 score fell to 3.5/5, a "meets expectations" review. Amegy states that "Kennedy's opinion of Sears' management and marketing skills had become less favorable in 2017" once Kennedy began working directly with Sears.

According to Amegy, in late 2017 it began to consider hiring a new manager for the Dallas energy lending group. A January 2018 email between bank executives states that the bank was putting "feelers" out for a new manager and "once found, [Amegy] would consider transitioning Larry out." According to the bank, it determined that it needed to eliminate one of

the four SVP positions to make room in the budget for such a manager. To determine which SVP to eliminate, Kennedy performed an informal ranking. Kennedy ranked Sears last and decided to eliminate his position. Amegy finalized this decision by April 2, 2018. On April 30, 2018, Kennedy traveled to Dallas to tell Sears that he was terminated. In August 2018, Amegy suspended its search for an outside candidate and assigned Scott Collins, the manager of Amegy's Houston energy lending department, the role of managing the Dallas department.

Sears sued Amegy alleging that he was terminated because of his age. Amegy removed the suit to federal court and later moved for summary judgment. The district court granted Amegy's motion, finding that Sears failed to establish a prima facie case of age discrimination and failed to demonstrate that Amegy's proffered reason for Sears's termination was pretextual. Sears timely appealed.

## II.

This court reviews a grant of a motion for summary judgment de novo, and applies the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Courts do not disfavor summary judgment, but, rather, look upon it as an important process through which parties can obtain a 'just, speedy and inexpensive determination of every action.'" *Goldring v. United States*, 15 F.4th 639, 644 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). "A party asserting that there is no genuine dispute as to any material fact must support its assertion by citing to particular parts of materials in the record." *Id.* at 644–45.

## III.

Sears claims he was discharged because of his age in violation of the Texas Labor Code. Texas law provides that, "An employer commits an unlawful employment practice if because of . . . age the employer . . . discharges an individual." TEX. LAB. CODE § 21.051. Although Sears brings only a state law claim, the Texas Labor Code is designed "to correlate state law with federal law in employment discrimination cases," including the federal Age Discrimination in Employment Act. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (citation omitted); *see also Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466–67 (5th Cir. 2021). Accordingly, we may turn to federal case law for guidance in assessing Sears's claim.

As the parties acknowledge, Sears's employment discrimination claim is governed by the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of age discrimination. *Id.* at 802. If he does so, the burden shifts to his employer to put forth a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 802–03. If the employer provides such a reason, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretextual. *Id.* at 804–05.

### A. Prima Facie Case

To establish a prima facie case of age discrimination under Texas law, a plaintiff must demonstrate that he "(1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger, or (b) otherwise treated less favorably than others who were similarly situated but outside the protected

class." *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020). Only the fourth prong is disputed here. We have previously held that "[o]nly a minimal showing is necessary to meet this burden" of establishing a prima facie case. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *see also Prestige Ford Co. v. Gilmore*, 56 S.W.3d 73, 82 (Tex. App.—Houston [14th Dist.] 2001, pet. denied.).

"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Flores*, 612 S.W.3d at 312 (citation omitted). "Though their circumstances need not be 'identical,' they must be 'nearly identical.'" *Id.* (citations omitted). "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Id.* (citation omitted).

Here, Sears has produced sufficient evidence to create a dispute of material fact regarding whether he was treated less favorably than younger and similarly situated SVPs. First, a jury could find that Sears and Askew were similarly situated.[1] *See County of El Paso v. Aguilar*, 600 SW.3d 62, 77 (Tex. App.—El Paso 2020, no pet.) (noting that whether two employees are similar situated is a question of fact for the jury). Both were SVPs, both reported and Kennedy, and Sears attested to the fact that Askew performed nearly identical job duties based on his resume, which described Askew's job

[1] We acknowledge that two of the other SVPs were over the age of forty. Murray, who was near Sears's age, was involuntarily terminated shortly after Sears. Further, although McSorley is over the age of forty, her age difference with Sears can still give rise to an inference of age discrimination. This is because the "outside the protected class" element does not always have a logical connection to age discrimination when a younger (but still protected) employee is favored over an older employee. *See O'Connor v. Consol. Coin Caters Corp.*, 517 U.S. 308, 312–13 (1996); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 641 (Tex. 2012).

as early as February 2018. Although their reviews were not identical, Amegy concedes that it was "broadly satisfied" with Sears's performance. Moreover, Askew's performance records are incomplete, making it difficult to compare the SVP's review. And Sears's worst review came only after certain Amegy executives had discussed "transitioning Larry out."

A jury could also find that Sears was treated less favorably. Sears, the oldest SVP, was the only SVP selected for termination. Askew not only kept his job but was promoted. Indeed, the same day that Sears was fired, Askew was promoted to team lead. Kennedy's talking points for his April 30, 2018 trip to Dallas include scripts for both firing Sears and promoting Askew with a $9,000 raise. Based on this evidence, a jury could reasonably find that Sears was treated less favorably than a younger, similarly situated employee.

Because we find that Sears has produced sufficient evidence that he was treated less favorably than others who were similarly situated but outside the protected class to avoid summary judgment, we do not reach Sears's argument that he was replaced by Askew.

**B. Non-Discriminatory Reason**

Because Sears has produced sufficient evidence of a prima facie case to survive summary judgment, the burden shifts to Amegy to put forth a legitimate, non-discriminatory reason for Sears's termination. *McDonnell Douglas*, 411 U.S. at 802–03. This is a burden of production, not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The non-discriminatory reason that Amegy put forth here is that it chose to eliminate Sears because it needed to eliminate an SVP to make room in its budget for a new manager to oversee the Dallas energy banking department. Specifically, Amegy contends that Kennedy ranked the four SVPs and picked Sears last based on his high compensation, his failure to integrate with other departments, his past performance reviews, and an internal email that

Kennedy viewed as insubordinate. In the abstract, these are all legitimate reasons for Sears's termination.

**C. Pretext**

Because Amegy has put forth legitimate reasons for Sears's termination, the burden shifts back to Sears to demonstrate that "(1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439–40 (5th Cir. 2012) (quoting *Michael v. City of Dallas*, 314 S.W.3d 687, 691 (Tex. App.—Dallas 2010, no pet.)). Under Texas law, a plaintiff need only show that age was a "motivating factor" in the employer's decision, not a "but-for" cause of that decision. *See id.* at 440 (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001)).

A plaintiff must "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Laxton*, 333 F.3d at 579). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). "At the end of the day, the pretext inquiry asks whether there is sufficient evidence 'demonstrating the falsity of the employer's explanation, taken together with the prima facie case,' to allow the jury to find that discrimination was the . . . cause of the termination.'" *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015)

(quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).

Sears calls Amegy's explanation into doubt with a variety of well-taken arguments. First and foremost, Amegy's actions contradict its proffered explanation. Amegy claims to have terminated Sears in order to open up room in its budget to hire a manager to oversee the Dallas energy banking department. But it never hired that manager. Instead, in August 2018, just three months after terminating Sears, it "decided for independent business reasons to suspend its search for an outside candidate to replace the long-since departed McCarter." That Amegy abandoned its search for a new manager—the purported impetus for firing Sears—only three months after Sears's termination undermines the bank's explanation.

Additional evidence contradicts Amegy's proffered explanation that the termination decision was made by Kennedy after he conducted an informal ranking of the SVPs. Kennedy claimed to have performed his informal ranking in "the spring of 2018." Similarly, Amegy represents in its brief that Kennedy considered Sears's 2018 performance review, which was issued on March 1, 2018. But a January 10, 2018 email between Amegy executives references "transitioning Larry out." This suggests that the choice to remove Sears was preordained and calls into question the veracity of Kennedy's Spring 2018 ranking of the SVPs.

Finally, Sears presents evidence that Amegy deviated from its own established policies for reviewing and providing feedback to Sears. A 2016 email from Kennedy describing a "change to [Amegy's] performance review process" states that "[m]anagers are being asked to take time to meet individually with employees on their teams to see how they are doing, both relative to their goals and with their plans for the rest of the year. This will also be a time to reinforce any goals that may need extra attention." At

Kennedy's deposition he acknowledged that he was required to comply with the performance review policy but testified that he was "not sure" if he issued Sears a performance appraisal that complied with Amegy's policies. Sears testified that the only feedback that Kennedy ever gave him was in April 2018, after the decision to fire him had already been made.

We have repeatedly held that an employer's failure to follow its internal protocols in terminating an employee or in reviewing the employee before termination can be evidence of pretext. *See Goudeau*, 793 F.3d at 477; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354–55 (5th Cir. 2005), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 577 U.S. 167 (2009); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir. 2000). The failure to follow even non-mandatory policies can give rise to an inference of pretext. *See Machinchick*, 398 F.3d at 354 n.29. Amegy concedes that Sears's relatively poor ratings (relative to other SVPs) factored into the decision to rank him last. The evidence suggests that the ratings were unaccompanied by a performance review indicating any improvement may be needed, notwithstanding company policy to the contrary. Indeed, evidence suggests that only *after* deciding to terminate Sears did Kennedy comply with this policy by giving Sears an oral review telling him that improvement was needed. Viewed in the light most favorable to Sears, this evidence shows that Kennedy failed to follow the performance review policy that he acknowledged he was required to follow.

Considering all this evidence cumulatively, we are convinced that a jury could conclude that age was the reason for Sears's termination based on the evidence Sears has produced to undermine the genuineness of Amegy's explanations. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. This is particularly true under Texas law, where a

plaintiff need only establish that age was a "motivating factor" in the Amegy's decision to terminate Sears. *Goudeau*, 793 F.3d at 475. Accordingly, the district court erred in granting summary judgment in Amegy's favor.

## IV.

Sears has provided sufficient evidence to survive summary judgment on his age discrimination claim. Accordingly, we REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.